## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

THOMAS LEE CLELLAND,

          *Plaintiff,*

v.

          Case No. 25-2279-EFM-ADM

CRAWFORD COUNTY, KANSAS, et al.,

          *Defendants.*

## MEMORANDUM AND ORDER

Plaintiff Thomas Lee Clelland, pro se, brings this civil suit under 42 U.S.C. § 1983 and Kansas state law concerning the tax foreclosure sale of his home in Pittsburg, Kansas. Plaintiff sues those involved in the sale who now move to dismiss. Defendant Bob Offutt, pro se, the purchaser of Plaintiff's home, brings a Motion to Dismiss for lack of jurisdiction (Doc. 11) and a duplicate Motion to Dismiss Party (Doc. 12). Defendants Crawford County Board of Commissioners; Commissioners Tom Moody, Bruce Blair, and Carl Wood; former Crawford County Sheriff, Dan Smith; and Crawford County Counselor, Jim Emerson (collectively "County Defendants") also bring a Motion to Dismiss (Doc. 13). Defendants Debra Russell and Sandra Green, clerks of the Crawford County District Court, bring the final Motion to Dismiss (Doc. 14). Plaintiff also brings a Motion for Summary Judgment on Count II of the Complaint (Doc. 24). For the reasons stated below, the Court grants Defendants' respective motions and denies Plaintiff's Motion for Summary Judgment as moot.

# I.    Factual and Procedural Background[1]

Plaintiff's case begins in 2015 when he, and his now-deceased father, became defendants in a delinquent property tax foreclosure case filed by the Crawford County Board of Commissioners. Plaintiff was not personally served until June 19, 2019, and the delinquent property tax trial took place on July 6, 2021. Plaintiff asserts he did not receive notice of the trial's date or time, which resulted in a default judgment entered against him on July 23, 2021. The Crawford County District Court confirmed the sheriff's sale of Plaintiff's home on October 14, 2021, to satisfy the judgment against him. Plaintiff asserts he did not receive notice of the court's confirmation or the date and time his property was to be sold.

Smith, the then-Sheriff of Crawford County, conducted a sheriff's sale of Plaintiff's property on October 24, 2021. Other properties were sold at the same sheriff's sale. Offutt, a current Colorado citizen, was reported as the highest bidder on Plaintiff's home, paying $8,100 to the clerk of the district court the same day, which Plaintiff asserts is an inadequate sale price. Offutt personally notified Plaintiff he had purchased Plaintiff's home and two other properties on October 25, 2021. According to Plaintiff, Offutt said he actually paid $30,000 for Plaintiff's property instead of the reported $8,100. Plaintiff also alleges that Offutt never paid the district court for the properties purchased at the October 24, 2021, sheriff's sale. Ultimately, Plaintiff alleges that Sheriff Smith intentionally falsified a deed showing Offutt paid for the property at the October 24, 2021, sheriff's sale, and faults the County Commissioners for not addressing the discrepancies Plaintiff identifies in the sheriff's sale.

---

[1] The facts are taken from Plaintiff's Complaint and are considered true for purposes of this Order.

Plaintiff's foreclosure case continued after the sheriff's sale. Before the sheriff's sale occurred, Plaintiff filed a motion to vacate the sheriff's sale of his home to satisfy the tax judgment against him on October 8, 2021. Plaintiff argued that he paid his taxes on time, other tax payments were made but not posted, and his family was overtaxed for decades. After the sheriff's sale, Offutt filed an independent eviction case in mid-February 2022 seeking possession of Plaintiff's home. But Plaintiff alleges Offutt abandoned the case after the Crawford County District Court did not accept the sheriff's deed Offutt offered as proof of ownership. The Crawford County District Court later recused itself from the eviction case, and Judge Fred W. Johnson from the Labette County District Court was assigned to Plaintiff's foreclosure case.

Judge Johnson conducted a bench trial on Plaintiff's motion to vacate on December 6, 2022, and denied it on January 9, 2023 in an "un-noticed" order. Emerson, the Crawford County Counselor, authored the order. Plaintiff alleges he was not provided a copy of this order. Plaintiff also alleges that, despite timely appealing the order, the clerk of the district court fabricated an unsigned and undated eviction order on Offutt's behalf to induce the court to confirm the sale of his home. Offutt and Sheriff Smith executed this eviction order on May 19, 2023, at the direction of the clerk of the district court. As a result, Plaintiff alleges he suffered a 100% loss of all his personal possessions and irreparable damages.

Plaintiff filed this suit on May 19, 2025. His Complaint narrates that all Defendants conspired together to deprive him of his civil rights, the final act being the May 19, 2023, execution of the fabricated eviction order. Plaintiff's Complaint contains six counts. Several counts lodge multiple claims based on federal and state laws against multiple Defendants.

Count I alleges a § 1983 claim based on the Fourteenth Amendment Due Process Clause against Moody, Wood, Blair, Emerson, Russell and Green in their official and personal capacities.

Count II alleges a § 1983 claim based on the Fifth Amendment Taking Clause against Moody, Wood, and Blair in their official and personal capacities.

Count III alleges violations of Kansas state law—namely fraud—and a § 1983 claim based on the Fourteenth Amendment Due Process Clause against Smith in his official and personal capacities.

Count IV alleges violations of Kansas state law and a § 1983 claim based on the Fourteenth Amendment Due Process Clause against Russell and Green in their official and personal capacities.

Count V alleges violations of Kansas state law—including home equity theft, conspiracy, and fraud—and a § 1983 claim based on the Fourteenth Amendment Due Process Clause against each named Defendant in their official and personal capacities.

Count VI incorporates the facts pled in Counts I–V specifically against Emerson and alleges fraud, concealment, statutory and ethical violations, misrepresentation, and conspiracy against Emerson in his official and personal capacity.

All Defendants now move to dismiss Plaintiff's respective claims against them. Plaintiff also moves for partial summary judgment on Count II.

## II.    Legal Standards

### A.    Motion to Dismiss under Rule 12(b)(1)

Under Rule 12(b)(1), a defendant may move to dismiss a claim for lack of subject-matter jurisdiction.[2] Federal courts are courts of limited jurisdiction, and a presumption exists against exercising jurisdiction over a case.[3] The party asserting jurisdiction bears the burden of establishing its existence.[4] Thus, the Court may exercise jurisdiction only when specifically authorized to do so and must dismiss a claim if it becomes apparent at any stage of the proceedings that it lacks jurisdiction.[5]

### B.    Motion to Dismiss under Rule 12(b)(6)

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[6] Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"[7] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[8] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature

---

[2] Fed. R. Civ. P. 12(b)(1).

[3] *See In re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th 1126, 1170 (10th Cir. 2023) (citations omitted).

[4] *Id.* at 1171.

[5] *Siloam Springs Hotel, LLC v. Century Sur. Co.*, 906 F.3d 926, 931 (10th Cir. 2018).

[6] Fed. R. Civ. P. 12(b)(6).

[7] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[8] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

of claims as well as the grounds on which each claim rests.[9] Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[10] Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[11] If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"[12]

## C.    Construing Pro Se Complaints

Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers."[13] A pro se litigant is entitled to a liberal construction of his pleadings.[14] If a court can reasonably read a pro se complaint in such a way that it could state a claim on which it could prevail, it should do so despite "failure to cite proper legal authority . . . confusion of various legal theories . . . or [Plaintiff's] unfamiliarity with pleading requirements."[15] But it is not the proper role of a district court to "assume the role of advocate for the pro se litigant."[16] As it relates to

---

[9] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[10] *Iqbal*, 556 U.S. at 678–79.

[11] *See id.* at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

[12] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

[13] *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

[14] *See Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007) ("Because [plaintiff] appears pro se, we review his pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys.").

[15] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[16] *Id.*

motions to dismiss generally, the court "accept[s] the well-pleaded allegations of the complaint as true and construe[s] them in the light most favorable to the plaintiff."[17] "Well-pleaded" allegations are those that are facially plausible such that "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged."[18]

### III.    Analysis

As a preliminary matter, Plaintiff asserts that Defendants' motions are moot in the event the Court grants him leave to file a first amended complaint. Plaintiff's request for leave was denied without prejudice for failure to comply with D. Kan. Rule 15.1(a)(2).[19] To date, Plaintiff has not properly filed a motion for leave to amend, nor has the Court granted it. As such, Defendants' motions remain live, and the Court addresses each in turn.

### A.    Defendant Offutt's Motion to Dismiss

In Count V, Plaintiff brings a § 1983 claim against Offutt alleging violations of the Fourteenth Amendment's Due Process Clause and several Kansas state laws. Offutt challenges the sufficiency of the Complaint under Rules 12(b)(1) and (2), moving to dismiss for lack of subject matter and personal jurisdiction. The Court need not consider Plaintiff's and Offutt's arguments on personal jurisdiction under Rule 12(b)(2) because, as explained below, Plaintiff's Complaint fails to plead subject matter jurisdiction under Rule 12(b)(1) over Offutt.

---

[17] *Ramirez v. Dep't of Corr., Colo.*, 222 F.3d 1238, 1240 (10th Cir. 2000).

[18] *Iqbal*, 556 U.S. at 678.

[19] Doc. 38.

Subject matter jurisdiction in federal court takes two forms: federal question jurisdiction and diversity jurisdiction.[20] Federal question jurisdiction encompasses matters "arising under the Constitution, laws, or treaties of the United States."[21] Diversity jurisdiction encompasses matters arising under state law when the parties are citizens of different states and the amount in controversy exceeds $75,000.[22] The diversity requirement is a "complete" diversity requirement.[23] In cases with multiple defendants, a plaintiff must be a citizen of a state different from *each* defendant—not just one defendant—for there to be complete diversity.[24] Any overlap destroys diversity of citizenship such that a federal court lacks diversity jurisdiction.[25]

Here, Plaintiff pleads subject matter jurisdiction over Offutt under diversity jurisdiction in the Complaint. There is overlap, however, between the citizenship of Plaintiff and Defendants. True, Plaintiff is a Kansas citizen whereas Offutt is a Colorado citizen. But the County Defendants, Russell, and Green are Kansas citizens like Plaintiff. Because Plaintiff is not a citizen of a state different from each Defendant in this case, there is not complete diversity between the parties. As such, the Court lacks diversity jurisdiction over Offutt in this case.

Attempting to save subject matter jurisdiction over Offutt, Plaintiff points to the Civil Cover Sheet where he marked "Federal Question" as the basis of jurisdiction in this case. But a

---

[20] *Nicodemus v. Union Pac. Corp.*, 318 F.3d 1231, 1235 (10th Cir. 2003).

[21] 28 U.S.C. § 1331.

[22] 28 U.S.C. § 1332(a).

[23] *Id.*; *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

[24] *Caterpillar Inc.*, 519 U.S. at 68.

[25] *See id.*

-8-

civil cover sheet is an administrative document that does not replace or supplement a complaint, as Plaintiff's Civil Cover Sheet itself indicates.[26] Plaintiff also generally asserts in his Response that the Court has federal question jurisdiction over Offutt.[27] But subject matter jurisdiction must be pled in a complaint itself, not in response to a motion to dismiss.[28] Turning to Plaintiff's Complaint, it specifically pleads federal question jurisdiction "over all defendants as residents of the County of Crawford in the State of Kansas . . . *except* defendant Bob Offutt."[29] Thus, Plaintiff's Complaint limits his pleading of the Court's subject matter jurisdiction over Offutt to diversity jurisdiction which, as previously addressed, is lacking. Accordingly, the Court dismisses Plaintiff's claims against Offutt.

## B. The County Defendants' Motion to Dismiss

The County Defendants move to dismiss Plaintiff's § 1983 and Kansas state law claims against them, raising several challenges to the Complaint's sufficiency. The Court need only address two of these challenges: lack of notice under K.S.A. 12-105b(d) and the statute of limitations. The Court addresses each challenge in turn.

---

[26] *See* Doc. 2 at 1 ("The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.").

[27] Plaintiff also asserts in his Response that subject matter jurisdiction over Offutt is satisfied under K.S.A. 60-308(b), the Kansas long-arm statute. While the Kansas long-arm statute might establish the Court's *personal* jurisdiction over Offutt, it does not establish the Court's *subject matter* jurisdiction over Offutt. *See Heating & Cooling Master Marketers Network, Inc. v. Contractor Success Grp., Inc.*, 935 F. Supp. 1167, 1170 (D. Kan. 1996) (citation omitted). The Court must have both for Plaintiff's claims against Offutt to survive his Motion to Dismiss. Fed. R. Civ. P. 12(b)(1)–(2).

[28] *See* Fed. R. Civ. P. 8(a)(1).

[29] Doc. 1 at 6 (emphasis added).

1.    *Plaintiff's State Law Claims in Counts III and V Against the County Defendants are Barred for Lack of Notice Under K.S.A. 12-105b*

The County Defendants first assert that the Kansas state law claims against them in Counts III and V are barred for lack of notice under K.S.A. 12-105b. K.S.A. 12-105b(d)(1) states in pertinent part:

> any person having a claim against a municipality or against an employee of a municipality which could give rise to an action brought under the Kansas tort claims act shall file a written notice as provided in this subsection before commencing such action. The notice shall be filed with the clerk or governing body of the municipality and shall contain the following: (A) The name and address of the claimant and the name and address of the claimant's attorney, if any; (B) a concise statement of the factual basis of the claim, including the date, time, place and circumstances of the act, omission or event complained of; (C) the name and address of any public officer or employee involved, if known; (D) a concise statement of the nature and the extent of the injury claimed to have been suffered; and (E) a statement of the amount of monetary damages that is being requested. In the filing of a notice of claim, substantial compliance with the provisions and requirements of this subsection shall constitute valid filing of a claim . . . . No person may initiate an action against a municipality or against an employee of a municipality unless the claim has been denied in whole or part.

K.S.A. 12-105b(d)(1)'s notice requirements "are mandatory and a condition precedent to bringing a tort claim against a municipality."[30]

Here, Plaintiff argues that his prior correspondence with the County Defendants satisfies the statute. The Court has reviewed the "correspondence from Clelland to Defendants" Plaintiff provided, which generally chronicles Plaintiff's claim that the tax foreclosure sale of his home was improper, describes the sale of a home not belonging to Plaintiff at the October 24, 2021, sheriff's sale, and seemingly requests an independent audit on the sale of his home.[31] But Plaintiff's

---

[30] *Garcia v. Anderson*, 46 Kan. App. 2d 1094, 268 P.3d 1248, 1251 (2012) (citations omitted).

[31] *See* Doc. 18 at 31–40.

informal correspondence fails to substantially comply with the formal written notice of claim requirements outlined in K.S.A. 12-105b(d).

Next, Plaintiff correctly argues K.S.A. 12-105b does not apply to his § 1983 claims. "[A] plaintiff is not required to comply with K.S.A. 12-105b prior to bringing a § 1983 action."[32] But the County Defendants raise their K.S.A. 12-105b challenge to the *state* law claims Plaintiff brings against them in Counts III and V. K.S.A. 12-105b applies to these claims.[33] Accordingly, these claims are barred for Plaintiff's failure to comply with K.S.A. 12-105b.

### 2.    *Plaintiff's Remaining Claims Against the County Defendants are Barred by the Statute of Limitations*

Next, the County Defendants assert that Plaintiff's remaining claims against them are barred by the applicable statute of limitations. Because § 1983 itself does not contain an express statute of limitations, courts generally "apply the statute of limitations applicable for personal injury actions in the state where the claim accrued."[34] Plaintiff's claims accrued in Kansas, so the applicable statute of limitations to his claims is two years.[35] As such, Plaintiff had two years from the date his claims accrued to file his claims.

---

[32] *Sage v. Williams*, 23 Kan. App. 2d. 624, 933 P.2d 775, 781 (1997) (quoting *Reidenbach v. U.S.D. No. 437*, 878 F. Supp. 178, 181 (D. Kan. 1995)).

[33] K.S.A. 12-105b(d)(1) ("[A]ny person having a claim against a municipality or against an employee of a municipality which could give rise to an action brought under the Kansas tort claims act shall file a written notice as provided in this subsection before commencing such action.").

[34] *Keith v. Koerner*, 843 F.3d 833, 850 (10th Cir. 2016) (citing *Garcia v. Wilson*, 731 F.2d 640, 642 (10th Cir. 1984)).

[35] *See* K.S.A. 60-513(a)(2)–(4) (imposing a two-year statute of limitations for actions involving taking of property, fraud, and injury to the rights of another).

While state law provides the statute of limitations, federal law controls when federal causes of actions accrue.[36] Claims generally accrue under the federal discovery rule "when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action."[37] A § 1983 claim, in particular, "accrues when facts that would support a cause of action are or should be apparent."[38] Similarly, a plaintiff's state law claims accrue when "the fact of injury becomes reasonably ascertainable to the injured party."[39]

Here, the facts that would support Plaintiff's claims against the County Defendants are based on the justifications for foreclosing on his home (Counts I, II, and III) and for the process of selling it (Counts III, V, and VI). Plaintiff's Complaint acknowledges that he received personal service of the foreclosure of his home on June 19, 2019. Plaintiff's Complaint also acknowledges that Offutt notified him on October 25, 2021, that Offutt obtained title to the property. These are the dates that the facts supporting Plaintiff's claims against the County Defendants should have been apparent to him. Plaintiff did not sue the County Defendants until May 19, 2025, which is beyond the two-year statute of limitations.

Attempting to avoid the statute of limitations, Plaintiff invokes the doctrine of fraudulent concealment to argue that the statute of limitations did not begin to run until, as he alleges, he learned that Offutt did not actually pay for Plaintiff's home sold at the sheriff's sale, investigated the sale, and discovered the County Defendants' silent, fraudulent actions. For fraudulent

---

[36] *Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004) (citation omitted).

[37] *Id.* (quotation omitted).

[38] *Id.* (quotation omitted).

[39] K.S.A. 60-513(b).

concealment to toll the statute of limitations, "[t]here must be some actual artifice to prevent knowledge of the fact, some affirmative act of concealment, or some misrepresentation to exclude suspicion and prevent injury."[40] Mere silence or failure to disclose does not by itself constitute fraudulent concealment.[41] Plaintiff does not plead that the County Defendants engaged in an affirmative act of concealment; he simply pleads that they were collectively silent. Accordingly, fraudulent concealment does not apply.

Next, Plaintiff invokes a continuing conspiracy argument that the statute of limitations did not begin to run until May 19, 2023. This argument relates to Count V and VI, where Plaintiff asserts all Defendants conspired to deprive him of his civil rights. Plaintiff asserts May 19, 2023, is the accrual date because Defendants Smith, Russell, Green, and Offutt executed the eviction order against him that day, which Plaintiff asserts is the last offense to the conspiracy. But under Kansas law, a civil conspiracy claim is subject to the statute of limitations for the underlying tort.[42] As such, when "the underlying wrong is time barred, the civil conspiracy claim is time barred as well."[43] Because the torts underlying Plaintiff's conspiracy claims against the County Defendants are time barred, his conspiracy claims are time barred as well.

---

[40] *Friends Univ. v. W. R. Grace & Co.*, 227 Kan. 559, 608 P.2d 936, 941 (1980) (quotation omitted).

[41] *Id.*

[42] *Meyer Land & Cattle Co. v. Lincoln Cnty. Conservation Dist.*, 29 Kan. App. 2d 746, 31 P.3d 970, 977 (2001).

[43] *Textron Aviation, Inc. v. Superior Air Charter, LLC*, 420 F. Supp. 3d 1186, 1194 (D. Kan. 2019) (internal quotations and citation omitted).

-13-

Plaintiff's claims against the County Defendants are either barred by the statute of limitations or for lack of notice under K.S.A. 12-105b. Accordingly, the Court dismisses Plaintiff's claims against the County Defendants.

## C.    Defendants Russell and Green's Motion to Dismiss

Defendants Russell and Green move to dismiss Plaintiff's § 1983 and Kansas state law claims against them, in part, as barred by the statute of limitations. Like Plaintiff's claims against the County Defendants, his claims against Russell and Green are based on the justifications for, and process of, selling his home and are subject to Kansas's two-year statute of limitations.[44] Plaintiff also incorporates the same statute of limitations arguments he made against the County Defendants against Russell and Green. As previously discussed, Plaintiff's arguments fail, and his claims against Russell and Green are time barred. Accordingly, the Court dismisses Plaintiff's claims against Russell and Green.

## D.    Plaintiff's Motion for Partial Summary Judgment

Finally, Plaintiff moves for partial summary judgment on Count II. Because the Court dismisses Count II as barred by the statute of limitations, the Court denies Plaintiff's Motion as moot.

**IT IS THEREFORE ORDERED** that Defendant Offutt's Motion to Dismiss (Doc. 11) and Motion to Dismiss Party (Doc. 12) are **GRANTED.**

**IT IS FURTHER ORDERED** that the County Defendants' Motion to Dismiss (Doc. 13) is **GRANTED**.

---

[44] K.S.A. 60-513(a)(2)–(4) (imposing a two-year statute of limitations for actions involving taking of property, fraud, and injury to the rights of another).

**IT IS FURTHER ORDERED** that Defendants Russell and Green's Motion to Dismiss (Doc. 14) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Doc. 24) is **DENIED as moot**.

**IT IS SO ORDERED.**

This case is closed.

Dated this 19th day of November, 2025.


ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

-15-